# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Susan Beyer,<br><br>*Plaintiff*,<br><br>*vs*<br><br>Olmsted Medical Center, a Minnesota non-profit corporation,<br><br>*Defendants*. | Court File No. 22-cv-3146 NEB/DTS<br><br><br>**AMENDED COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Susan Beyer ("Plaintiff" or "Plaintiff Beyer"), makes the following allegations for her Amended Complaint against Defendant Olmsted Medical Center ("Defendant Olmsted").

## INTRODUCTION

1.      In September 2021, Defendant Olmsted Medical Center ("Defendant Olmsted") mandated that all its employees, receive the Covid-19 vaccination as a condition of continuing their employment ("Vaccine Mandate").  Many of the Defendant's employees, including Plaintiff, objected to receiving these vaccinations because of their sincerely-held religious beliefs.  Plaintiff filed a request for a religious exemption with Defendant to be exempt from taking the Covid-19 vaccination. Defendant denied the requested religious exemptions.  In addition, Defendant failed to undertake an individual interactive process with the Plaintiff as required for evaluating religious exemption requests.  Defendant terminated the Plaintiff's employment based solely on Plaintiff's refusal to take the Covid-19 vaccine.

2.      Based on Defendant's implementation of the Vaccine Mandate and its refusal to grant Plaintiff's request for a religious exemption, Plaintiff brings claims under Title VII for religious discrimination, the Americans with Disabilities Act ("ADA") based on the Vaccine Mandate, related state claims under the Minnesota Human Rights Act for religious discrimination and disability discrimination and breach of contract, and claims for violation of Plaintiff's Constitutional Rights under the Free Exercise clause of the First Amendment to the United States Constitution and protected  Fourteenth Amendment Liberty interests.

## JURISDICTION AND VENUE

3.      Plaintiff has fulfilled the jurisdictional requirements of Title VII of the Civil Rights Act of 1964 and the ADA, including the filing of a Charge with the EEOC, and the receipt of a right-to-sue letter from Equal Employment Opportunity Commission ("EEOC") following closure of the EEOC file, all in compliance with 42 U.S.C. §2000e-5(f)(1).

4.      This Court has original subject matter jurisdiction over this case, as it raises claims pursuant to federal statute, pursuant to 28 U.S.C. §1331. This Court further has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

5.      This Court has personal jurisdiction over Defendant Olmsted as it is a non-profit corporation operating in and located in the State of Minnesota, and is a state actor.

6.      Defendant Olmsted Medical Center is subject to the provisions of Title VII and the ADA because Defendant Olmsted employs more than fifteen employees in each

2

of twenty or more calendar weeks in the current or preceding calendar year under 42

U.S.C. §2000e (b) and 42 U.S.C. §12111 (5)(A).

7.      Venue is proper in the District of Minnesota under 28 U.S.C. § 1391(e)(1)

because the actions giving rise to this cause of action occurred in Minnesota, and

Defendant conducts business in the State of Minnesota.

## PARTIES

8.      Plaintiff Beyer is an Olmsted County, Minnesota resident who worked for

Defendant Olmsted as a registered nurse.

9.      Defendant Olmsted is a Minnesota Nonprofit Corporation which operates

medical facilities in Minnesota.

## FACTS

10.     During the pandemic in 2020 and 2021, Plaintiff was asked to work her

own and sometimes additional shifts in order to cover the increase in treatment and care

for patients during the height of the Covid-19 pandemic.  At that time, Plaintiff, while

unvaccinated, continued to provide patient care or continue working during the pandemic

while employed by Defendant.

11.     Defendant recognized the important work that all of its employees were

doing—the unvaccinated and the vaccinated.

12.     When Covid-19 vaccines first became available in December 2020

Defendant encouraged, but did not require its employees to get vaccinated, and Plaintiff

continued to work throughout 2020 and 2021 while unvaccinated.

13.     However, in September 2021, Defendant Olmsted implemented its Vaccine Mandate for all of its employees.  The Vaccine Mandate stated that "OMC requires all employees to submit proof of *competed vaccination*, *be vaccinated*, or submit a *declination form* by October 15, 2021."

14.     Thus, to avoid "suspension without pay" or outright termination, all employees had to:

- "*Submit proof of completed vaccination*," i.e. prove the one, or two doses of vaccine;

- "*Be vaccinated*," i.e. to at least have started the two shot vaccination process by October 15, 2021 and "continue the process until they are fully vaccinated," or

- Submit a *declination form*, and participate in mandatory education regarding Covid-19 and the vaccine, and participate in weekly testing.

15.     Defendant Olmsted employees could keep their job if they were "*completely vaccinated*," or were partially vaccinated as of October 15, 2021, or submitted a declination form and participated in the mandatory education and submitted to weekly testing.

16.     Defendant Olmsted employees would lose their job, or be suspended without pay, if they failed to complete the already started vaccination process, or submit a Declination form affirmatively stating they were not going to be vaccinated.

17.     The employees' vaccination process was "*monitored*" until the employees were "*fully vaccinated*."  Failure to become "*fully vaccinated*" after the "monitoring process" would result in suspension without pay or termination.

4

18.     The Vaccine Mandate applied "*to all employees … regardless of role and work location*," meaning even workers working remotely were required to be vaccinated.

19.     Defendant announced that there were both medical and religious "reasons" to "decline" the vaccine, and did allow for employees to apply for a "*medical exemption" or a "religious exemption*" to the Vaccine Mandate.

20.     However, what Defendant gave with one hand, it took away with the other by proclaiming that "*it is important to note that all major religious denominations support individuals receiving the COVID-19 vaccine.  In addition, major religious denominations do not support using religious texts or passages as a reason to exclude individuals from receiving the COVID-19 vaccine.*"  In short, Defendant suggested that it would deny most or all requests for a religious exemption, and later decided to reject all requests for religious exemptions.

21.     Defendant Olmsted created a "religious exemption review team comprised of Human Resources and other staff" to "review declinations based on religious reasons."

22.     Defendant thus put itself in the position of deciding the sincerity of the religious belief of the Plaintiff and, whether a belief was "religious" or not.

23.     Defendant Olmsted created a "medical exemption team of OMC physicians" to review "each declination form" for medical reasons.

24.     Defendant also expressed limitations to the "*medical exemption*" to the Vaccine Mandate by stating: "*The known, absolute medical contraindications to COVID-19 vaccination:*

- *Severe anaphylaxis or allergic reaction to a previous does of COVID-19 vaccine or its components; or*

- *Severe anaphylaxis or allergic reaction to polyethylene glycol (PEG) or polysorbate.*

25.    Known, *temporary* medical contraindications to COVID-19 vaccination include:

- Having received COVID-19 monoclonal antibody treatment within the past 90 days;

- Currently recovering from a COVID-19 infection and required isolation;

- Currently recovering from a severe illness; or

- Currently pregnant or nursing.

Other medical conditions were preemptively discounted or disregarded.

26.    In the unlikely event a Defendant Olmsted employee would receive a religious or medical exemption, they still had to:

- 1) "*complete mandatory educational modules regarding COVID-19 and the vaccine;*" and

- 2) submit to "*weekly testing at OMC's COVID-19 testing site.*"  The weekly testing was required "*until they are fully vaccinated.*"

27.    Even if a religious or medical exemption was granted "*OMC will continue to evaluate if the exemption remains valid.*"  Thus, an exemption granted could be reversed at any time.

28.    Under Defendant Olmsted's religious exemption policy, as of October 15, 2021, over half of those attempting to obtain a religious, or medical exemption were

pressured into taking the Covid-19 vaccine, and some chose to quit working for Defendant Olmsted.  No more than 10% of those who declined the vaccine were approved for religious or medical exemptions.

29.     In late October 2021, Defendant Olmsted made its Vaccine Mandate more stringent.  Defendant Olmsted sent a communication to its employees outlining new steps to comply with the Covid-19 Vaccine Mandate policy.  By November 2, 2021, employees who had not been vaccinated had to "complete and return a plan to Defendant Olmsted Human Resources Department stating how you will obtain full vaccination status against COVID-19".   The first dose had to be received by November 19 and full vaccination had to occur by December 17, 2021, or the employee would be terminated.

30.     Additionally, Defendant Olmsted began rejecting all requests for religious exemptions claiming, without undergoing any interactive process with applicants for a religious exemption, that granting any religious exemption would cause undue burden.  Thus, Defendant Olmsted's Vaccine Mandate evolved into a "vaccinate or be terminated" policy.

31.     Defendant's institution of the Vaccine Mandate constituted public health decision-making, a power traditionally reserved to the state or other government under the Police Powers.

32.     Defendant's institution of the Vaccine Mandate constituted restrictions on individual liberty, or compelled activity against her will, similar to forced proscription in the military, a power traditionally reserved to the state or other government under the Police Powers.

33.     Defendant Olmsted has admitted that it instituted its Vaccine Mandate because it believed the government wished Defendant Olmsted to do so.

34.     Defendant Olmsted also admitted that under the CMS regulations, Defendant Olmsted believed it was obligated to refuse all requests for religious exemption to the Vaccine Mandate, and to require all of its employees to receive the Covid-19 vaccinations, or be terminated.

35.     Defendant believed it was acting consistent with the government's wishes, and as an agent of the government, in instituting the Vaccine Mandate, and rejecting all requests for religious exemptions.

36.     Defendant Olmsted has also admitted that it instituted the Vaccine Mandate so that Defendant Olmsted could maximize its receipt of "annual increases" of Medicare reimbursements, and "receive the full annual percentage increase" in Medicare reimbursement.

37.     Defendant Olmsted has admitted its Vaccine Mandate was "the only way" to "secure the Medicare reimbursement rate increase."

38.     Defendant Olmsted instituted its Vaccine Mandate consistent with the government's plan to "incentivize" health care providers such as itself to maximize the percentage of employees who had received the Covid-19 vaccinations, and therefore receive as much money from the government as possible.

39.     Consistent with Defendants' initial instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Beyer requested a religious exemption from Defendant Olmsted, which Defendant Olmsted

denied.  Plaintiff appealed the denial of her request for a religious exemption, but this did not change Defendant's denial of Plaintiff's request for the religious exemption to taking the vaccine.  Defendant Olmsted did not provide Plaintiff Beyer with the criteria it used in evaluating her request for a religious exemption nor did Defendant Olmsted provide specific information regarding the reasons for the denial of Plaintiffs' request for a religious exemption.

40.     Plaintiff Beyer is a Christian and believes her body is a Temple of the Holy Spirit and must not be defiled by substances such as the vaccine.  Plaintiff believes she has a right and a duty to take care of her body and not harm it.  Since the available Covid-19 vaccines have negative health side effects, including death in some instances, she is obligated to refuse the vaccine.  Through prayer, Plaintiff Beyer has discerned that she cannot receive the vaccine.

41.     Plaintiff Beyer received positive job performance reviews for her work for Defendant, and her performance, attendance, and attitude, were ranked as "excellent."

42.     Plaintiff knows of people who received the Covid-19 vaccine and then shortly thereafter suffered from illnesses.

43.     Plaintiff Beyer proposed reasonable accommodations such as testing, self-monitoring, and use of PPE.  Defendant did not respond to this request.

44.     Rather than being an interactive process, Defendant Olmsted summarily denied the requests for religious exemptions with boilerplate language that: "*Your request for an exemption has been denied as you did not clearly state a religious reason for this*

*exemption on your initial declination from and/or in response to request for additional information*."

45.     Defendant Olmsted terminated Plaintiff Beyer on November 19, 2021. Plaintiff Beyer filed a claim for religious and disability discrimination with the EEOC, and the EEOC issued Plaintiff Beyer a Right to Sue letter.

46.     As a result of Defendant's policy on restricting religious and medical exemptions, very few people qualified for those exemptions, resulting in mass terminations for those, including Plaintiff, who refused to be injected with the Covid-19 vaccine and whom Defendant terminated as a result.

47.     Defendant conducted no case-by-case analysis or individualized interactive process to discuss the Plaintiff's religious exemption request or possible accommodation of her religious objection.

48.     Defendant did not provide information to its employees, including the Plaintiff, about how Defendant determined whether the religious beliefs of those employees who submitted requests for a religious exemption to taking the Covid-19 vaccine were sincerely held or whether those religious beliefs would be accommodated.

49.     The Plaintiff submitted a good-faith statement of her sincerely-held religious beliefs, with explanations of how her faith constrained her from accepting the Covid-19 vaccination.  Defendant's exemption review team nevertheless denied the Plaintiff's request for a religious exemption and Defendant made no effort to accommodate her request for a religious exemption. Further, Defendant never considered

allowing Plaintiff to be accommodated by simply doing her job in the way she had been doing it prior to the Vaccine Mandate.

50.     The Plaintiff has not been determined to have transmitted Covid-19 to any patients or co-workers.

51.     Defendant, in issuing the Vaccine Mandate, instructed that all of its employees must be "vaccinated," despite the fact that what it means to be "vaccinated" has changed from one shot, to two shots, then three shots, then four shots, and even a discussion of a fifth shot or annual shots.

52.     Defendant issued the Vaccine Mandate mandating its employees, including Plaintiff, take the Covid-19 vaccine despite accumulating evidence that the Covid-19 vaccine does not provide protection as long lasting as had been previously represented, does not prevent infection or transmission, but only allegedly reduces the severity of Covid-19 if a person contracts Covid-19.

53.     On August 6, 2021, CDC Director Dr. Rochelle Walensky stated that vaccines against Covid-19 did not prevent transmission of SARS-CoV-2 variants (Virus).[1]  This followed the CDC's updated guidance and Dr. Walensky's comments on July 27, 2021, recommending that everyone wear a mask in indoor public settings in areas of substantial and high transmission, regardless of vaccination status. This decision was made with the data and science available to CDC at the time.  Some of "those data were published in CDC's *Morbidity and Mortality Weekly Report (MMWR)*,

---

[1] https://www.cnn.com/2021/08/05/health/us-coronavirus-thursday/index.html. (last accessed November 8, 2022).

demonstrating that **Delta infection resulted in similarly high SARS-CoV-2 viral loads in vaccinated and unvaccinated people. High viral loads suggest an increased risk of transmission and raised concern that, unlike with other variants, vaccinated people infected with Delta can transmit the virus**."[2]

54.     Dr. Deborah Birx, the former White House Covid Response Coordinator, stated in July 2022: "*I knew these vaccines were not going to protect against infection. And I think we overplayed the vaccines …*".  Separately Dr. Birx also stated: "*When we make broad statements, when we say to people that these vaccines are going to protect against infection – one, it wasn't studied,* …".  Dr. Birx made her statements in July 2022, approximately one year after President Biden stated: "*If you get vaccinated, you won't get Covid*."  President Biden (who has been vaccinated and boosted, yet has contracted Covid-19 at least twice), made his statement after Director of the National Institute of Allergy and Infectious Diseases, Dr. Anthony Fauci (who has been vaccinated and boosted, yet has contracted Covid-19), made the statement that "*when people are vaccinated, they can feel safe they will not be infected.*"  Dr. Anthony Fauci made his statement after Center for Disease Control Director Dr. Rochelle Walensky (who has been vaccinated and boosted, yet tested positive for Covid-19 as recently as October 2022), stated: "*vaccinated people do not get sick … do not spread the virus*."

---

[2] *Statement from CDC Director Rochelle P. Walensky, MD, MPH on Today's MMWR*, Centers for Disease Control and Prevention (July 30, 2021), https://www.cdc.gov/media/releases/2021/s0730-mmwr-covid-19.html (emphasis added). See also, https://www.cnn.com/2021/08/05/health/us-coronavirus-thursday/index.html. (last accessed November 8, 2022); https://www.cdc.gov/media/releases/2022/p0811-covid-guidance.html. (last accessed November 8, 2022).

55.     Vaccination does not prevent infection or transmission of Covid-19, and the CDC no longer differentiates between vaccinated and unvaccinated individuals.[3]

56.     While many, including the President, claimed that the Covid-19 pandemic was a pandemic of the unvaccinated, now the majority of people with Covid-19 were vaccinated to one extent or another.

57.     A very recent study indicates that people who took the Covid-19 vaccine are actually more likely to be hospitalized than people with natural immunity.

58.     The number of patients hospitalized *because* of Covid-19 positive status has also been overstated because many were hospitalized for other causes, not because of Covid-19.

59.     Similarly, the number of people who were counted as having died from Covid-19 were overstated because many of them died *with* Covid-19, not *from* Covid-19.

60.     The number of Covid-19 deaths were also overstated by upwards of 25%, or even more, because many of those who died had multiple co-morbidities.

61.     Dr. Deborah Birx stated "[*b]ut let's be very clear: 50% of the people who died from the Omicron surge were older, vaccinated*."

62.     The VAERS system has documented that the vaccines themselves have numerous harmful side effects associated with them.  Some of these harmful side effects are included in the lists of side effects described right on the vaccine literature, and warned about in "Fact Sheets" on the CDC website.

---

[3] https://www.cdc.gov/media/releases/2022/p0811-covid-guidance.html. (last accessed November 8, 2022).

63.     Thus, the extent of Covid-19 infections, the severity of the Covid-19 infection, the efficacy of the vaccines, and the time-length of vaccine protection may all have been overstated, contributing to an over exuberance in mandating vaccines, and punishing the unvaccinated, as Defendant has done as set forth above.

64.     The State of Minnesota ceased to be under a state-declared "emergency" over three months before Defendants instituted their Vaccine Mandate, as Governor Timothy Walz officially ended the State's emergency effective June 30, 2021.

## FIRST CAUSE OF ACTION

**Religious Discrimination and Failure to Accommodate under Title VII of the Civil Rights Act of 1964**

65.     Plaintiff restates and realleges all previous allegations as if fully set-forth herein.

66.     Defendant Olmsted is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

67.     Plaintiff is an "employee" within the meaning of 42 U.S.C. § 2000e(f).

68.     Plaintiff has sincerely held religious beliefs that prevented her from receiving the vaccine.  Plaintiff's beliefs arise because of her sincerely held religious beliefs.

69.     Plaintiff informed the Defendant of the conflict between Plaintiff's religious beliefs and taking the vaccine.

70.     Title VII of the Civil Rights Act prohibits discrimination on the basis of religion. *Id.* § 2000e-2. The Act further requires covered employers to provide reasonable accommodation to their employees' sincerely held religious beliefs. *Id.* § 2000e(j).

71.     The Act prohibits Defendant from scrutinizing what the Defendant believes to be the sincerity of Plaintiff's religious beliefs, or whether Plaintiff's exercise of her beliefs is logical or as consistent as Defendant believes the exercise of those religious beliefs should be.

72.     Guidance issued by the Equal Employment Opportunity Commission and decisions of the federal courts require that requests for reasonable accommodation be considered based on their individual, particularized circumstances, and that any claim of undue hardship or "direct threat" by the employer be assessed on a case-by-case basis rather than through application of a blanket rule.

73.     Plaintiff, in her request for accommodation from Defendant's Vaccine Mandate, made an individualized request for accommodation, but instead was terminated.

74.     In response to Plaintiff's request for reasonable accommodation of her sincerely-held religious beliefs, Defendant and its exemption review team applied a uniform, blanket rule in rejecting Plaintiff's requests, in violation of both Title VII and the EEOC's persuasive guidance on reasonable accommodation.

75.     Despite the Plaintiff's consistent requests for Defendant to engage in an interactive process regarding their requests for accommodation, Defendant refused throughout to engage in the interactive process and instead rejected Plaintiff's requests for an exemption for identical reasons as other of the Defendant's employees using an identical form letter.

76.     As set forth above, Defendant could have accommodated Plaintiff's requests for a religious exemption without suffering any undue hardship by having her

continue to do her job the same as she had done prior to her termination, and/or to continue to employ her subject to the reasonable accommodations that Plaintiff requested.

77.     Defendant's actions constitute discrimination on the basis of religion and failure to accommodate, all in violation of 42 U.S.C. §§ 2000(e)-2 and 2000(e)(j).

78.     Because of Defendant's unlawful actions, Plaintiff suffered and continue to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## SECOND CAUSE OF ACTION

### State law religious discrimination claim under MHRA, Minn. Stat. §363A.08

79.     Plaintiff restates and realleges all previous allegations as if fully set-forth herein.

80.     Minn. Stat. Sec. §363A.01, et seq. prohibits discrimination in employment based on religion.

81.     Defendant is an "employer" within the meaning of Minn. Stat. §363A.01.

82.     Plaintiff is an "employee" within the meaning of Minn. Stat. §363A.01.

83.     Plaintiff has sincerely held religious beliefs which prevented her from receiving the Covid-19 vaccine.

84.     Plaintiff informed the Defendant employer of the conflict between her religious beliefs and receiving the vaccine.

85.    Minn. Stat. §363A.01 et seq. prohibits discrimination on the basis of religion and further requires covered employers to respect and reasonably accommodate its employees' sincerely held religious beliefs.

86.    Minn. Stat. §363A.01 et seq. prohibits Defendant from scrutinizing what it believes to be the sincerity of Plaintiff's religious beliefs, or whether Plaintiff's exercise of her beliefs is logical or as consistent as Defendant believes the exercise of those religious beliefs should be.

87.    In response to the Plaintiff's requests for reasonable accommodation of her sincerely-held religious beliefs, Defendant's exemption review team applied a uniform, blanket rule in rejecting nearly all, in violation of the law.

88.    Despite Plaintiff's requests for Defendant employer to engage in dialogue regarding her requests for a religious exemption, the Defendant refused throughout to engage in the interactive process, and instead Defendant terminated Plaintiff for generalized reasons, using identical form letters.

89.    Defendants' actions constitute discrimination on the basis of religion in violation of Minn. Stat. §363A.01 et seq.

90.    Because of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

**THIRD CAUSE OF ACTION**

**Discrimination and Failure to Accommodate under
the ADA, 42 U.S.C. § 12101 *et seq.***

91.     Plaintiff restates and realleges all previous allegations as if fully set-forth

herein.

92.     Defendant Olmsted is an "employer" within the meaning of 42 U.S.C. §

12111(5)(A).

93.     Plaintiff was an "employee" of the Defendant employer within the meaning

of 42 U.S.C. § 12111(4).

94.     The ADA, at 42 U.S.C. § 12112 (d)(4)(a), prohibits employers from

requiring current employees to undergo medical examinations or inquiries unless it is job

related and consistent with business necessity.

95.     Defendant's Vaccine Mandate violated 42 U.S.C. § 12112 (d)(4)(a), by

initially requiring testing, and then by simply terminating the Plaintiff.  Defendant's

Vaccine Mandate policy was neither job related nor consistent with business necessity.

Since the Covid-19 vaccine did not prevent infection or transmission of Covid-19 by the

vaccinated, particularly the dominant Delta and Omicron variants at the time of

Plaintiff's termination, the discrimination between the vaccinated and unvaccinated

violated the ADA.

96.     As a result of Defendant's actions in violation of the ADA, Plaintiff

suffered and continues to suffer economic and other damages in amounts to be proven at

trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## FOURTH CAUSE OF ACTION

**Violation of Plaintiff's Free Exercise Rights Under the First Amendment to the Constitution—42 U.S.C. § 1983.**

97.     Plaintiff restates and realleges all previous allegations as if fully set-forth herein.

98.     The First Amendment to the United States protects the Free Exercise of Plaintiff's religious beliefs.

99.     Defendant was obligated under the Constitution to consider Plaintiff's religious beliefs and request for a religious exemption.

100.     Plaintiff informed Defendant of Plaintiff's sincerely held religious beliefs and requested an exemption to receiving the Covid-19 vaccine pursuant to Defendant's Vaccine Mandate.

101.     Defendant refused to consider Plaintiff's religious rights in denying her request for a religious exemption to taking the Covid-19 vaccine under Defendant's mandatory Vaccine Mandate.

102.     Plaintiff was forced to either take the vaccine against her will or be terminated from her job.

103.     Defendant acted as a state actor, and its wrongful actions, taken under color of law, constitute a deprivation of rights, privileges and immunities as contemplated under the United States Constitution and by 42 U.S.C. § 1983, including the following:

- Defendant's institution of the Vaccine Mandate constituted public health decision-making, a power traditionally reserved to the state or other government entity under the Police Powers;

- Defendant's institution of the Vaccine Mandate constituted restrictions on individual liberty, or compelled activity against her will, similar to forced proscription in the military, a power traditionally reserved to the state or other government entity under the Police Powers;

- Defendant Olmsted has admitted that it instituted its Vaccine Mandate because it believed the government wished Defendant Olmsted to do so;

- Defendant Olmsted also admitted that under the government's CMS regulations, Defendant Olmsted believed it was obligated to refuse all requests for religious exemption to the Vaccine Mandate, and to require all of its employees to receive the Covid-19 vaccinations, or be terminated;

- Defendant believed it was acting consistent with the government's wishes, and as an agent of the government, in instituting the Vaccine Mandate, and rejecting all requests for religious exemptions;

- Defendant Olmsted has also admitted that it instituted the Vaccine Mandate so that Defendant Olmsted could maximize its receipt of "annual increases" of Medicare reimbursements, and "receive the full annual percentage increase" in Medicare reimbursements;

- Defendant Olmsted has admitted its Vaccine Mandate was "the only way" to "secure the Medicare reimbursement rate increase;"

- Defendant Olmsted instituted its Vaccine Mandate consistent with the government's plan to "incentivize" health care providers such as Defendant Olmsted to maximize the percentage of employees who had received the Covid-19 vaccinations, and therefore receive as much money from the government as possible.

104. Because of Defendant's illegal conduct, Plaintiff has suffered economic and

other damages in amounts to be proven at trial, including front pay, back pay, emotional

distress damages, compensatory damages, punitive damages, and attorney fees in excess
of $75,000.

### FIFTH CAUSE OF ACTION

**Violation of Plaintiff's Fourteenth Amendment Liberty Interest Under the
United States Constitution—42 U.S.C. § 1983.**

105.    Plaintiff restates and realleges all previous allegations as if fully set-forth
herein.

106.    Plaintiff has a Fourteenth Amendment Right to determine her own bodily
autonomy, including what she must put into her body.

107.    Defendant refused to permit Plaintiff her right to determine what to put into
her body.

108.    Defendant's Vaccine Mandate is unconstitutional under both current strict-
scrutiny jurisprudence and the rule articulated in *Jacobson v. Massachusett*s, 197 U.S. 11
(1905).

109.    Defendant acted as a state actor, and its wrongful actions, taken under color
of law, constitute a deprivation of rights, privileges and immunities as contemplated
under the United States Constitution and by 42 U.S.C. § 1983.

110.    Because of Defendant's illegal conduct, Plaintiff has suffered economic and
other damages in amounts to be proven at trial, including front pay, back pay, emotional
distress damages, compensatory damages, punitive damages, and attorney fees in excess
of $75,000.

## SIXTH CAUSE OF ACTION

**Violation of Plaintiff's Rights Under the CMS Regulations.**

111.    Plaintiff restates and realleges all previous allegations as if fully set-forth herein.

112.    The CMS Regulations protect Plaintiff's Free Exercise of her religious beliefs.

113.    Defendant was obligated under the CMS Rules to consider and respect Plaintiff's religious beliefs and request for a religious exemption from the Vaccine Mandate.

114.    Plaintiff informed Defendant of Plaintiff's sincerely held religious beliefs and requested an exemption to receiving the Covid-19 vaccine pursuant to Defendant's Vaccine Mandate.

115.    Defendant refused to consider Plaintiff's religious rights in denying her request for a religious exemption to taking the Covid-19 vaccine under Defendant's mandatory Vaccine Mandate.

116.    Plaintiff was forced to either take the vaccine against her will or be terminated from her job.

117.    Defendant acted as a state actor, and its wrongful actions, taken under color of law, constitute a deprivation of rights, privileges and immunities as contemplated under the CMS Rules and by 42 U.S.C. § 1983.

118.    Because of Defendant's illegal conduct, Plaintiff has suffered economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional

22

distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues for which she has a right to trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff above-named prays for judgment in her favor and against Defendant for an Order of the Court as follows:

1.      Adjudging that Defendant is liable to employee Plaintiff for her actual damages in an amount to be proven at trial, including front pay, back pay, treble damages and statutory penalty, interest, emotional distress and pain and suffering, compensatory damages, punitive damages, and any damages or penalties available at law;

2.      Enjoining Defendant from taking further illegal action against Plaintiff in violation of both state and federal law, and Ordering Defendant to take action to restore Plaintiff to her position she would have enjoyed absent Defendant's illegal conduct;

3.      Awarding Plaintiff's costs, reasonable attorney fees, prejudgment interest, and any other relief permitted by statute; and

4.      Awarding such other relief as the Court may deem just and equitable, including, without limitation, an injunction prohibiting differences in treatment between the vaccinated and unvaccinated which do not have a scientific basis.

Dated: February 24, 2023

*s/Gregory M. Erickson*
Gregory M. Erickson, 276522
Vincent J. Fahnlander, 19220X
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Email: erickson@mklaw.com
Email: fahnlander@mklaw.com
*Attorneys for Plaintiffs*